**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

BRENDA CROUSE,

                Plaintiff,

      v.                                                No. 16-CV-222

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                            **OF COUNSEL:**

Lachman, Gorton Law Firm              PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

Social Security Administration,           ANDREEA L. LECHLEITNER, ESQ.
Office of General Counsel                Special Assistant U.S. Attorney
Attorneys for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**MEMORANDUM-DECISION AND ORDER**

     Plaintiff Brenda Dee Crouse ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act ("Act"). Plaintiff moves for a finding of disability, or, in the alternative, for the matter to be remanded for further proceedings, and the Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 10, 11.

## I. Background

On February 1, 2013, plaintiff protectively filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq., claiming an alleged onset date of July 31, 2010. T.[1] 139-45. The application was denied on April 3, 2013. Id. at 67-73. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Marie Greener on August 7, 2014. Id. at 82-84, 38-66 (transcript of the hearing). In a decision dated November 26, 2014, the ALJ held that plaintiff was not entitled to disability benefits. Id. at 20-33. Plaintiff filed a timely request for review with the Appeals Council, and on February 2, 2016, the request was denied, thus making the ALJ's findings the final decision of the Commissioner. Id. at 1-7. This action followed.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'more than a mere scintilla,'" meaning that in the record one can find "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)).

---

[1] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 9.

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); see Halloran, 362 F.3d at 31.

### B.  Determination of Disability

"Every individual who is under a disability. . . shall be entitled to a disability. . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04 Civ. 9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v.

Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)) (additional citation omitted).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### C. ALJ Greener's Findings

Plaintiff, represented by counsel, testified at the hearing held on August 7, 2014. T. 38-66. Using the five-step sequential evaluation, ALJ Greener found that plaintiff (1) had not engaged in substantial gainful activity since July 31, 2010, the alleged onset date,

-4-

through December 31, 2010, the date last insured; (2) had the following severe medically-determinable impairments: asthma, allergies, and mild degenerative disc disease of the lumbar spine; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintained "the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, stand for 6 hours out of an 8 hour workday, walk for 6 hours out of an 8 hour workday, and sit for 6 hours out of an 8 hour workday in an indoor, climate-controlled work environment"; and, thus; (5) given her age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy through the date last insured. Id. at 23-29.

### D. Plaintiff's Contentions

Plaintiff contends that the ALJ (1) failed to assess plaintiff's myofascial pain, mixed connective tissue disease, fatigue, fibromyalgia, cognitive dysfunction, chronic sinus pain, chronic vulvodynia, fibromyalgia, arthritis, and autoimmune disorder as severe impairments; (2) erred in assessing plaintiff's RFC on the basis of bare medical findings, and rejecting all of the medical opinions on the record; and (3) failed to properly assess plaintiff's pain in determining the RFC. See Dkt. No. 10.

### E. Analysis of Plaintiff's Arguments

#### 1. The ALJ Properly Applied the Treating Physician Rule

Plaintiff alleges that the ALJ's RFC determination was not supported by substantial

evidence, in part because the ALJ rejected all four medical opinions of record, assigning them "little weight." Dkt. No. 10 at 16. Plaintiff asserts that the ALJ's "bare medical findings" do not support the RFC determination. Id. Defendant counters that the ALJ provided "good reasons" for not assigning controlling weight to the treating source opinions. Dkt. No. 11 at 8.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw, 221 F.3d at 134. Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34;

see 20 C.F.R. § 404.1527(e).

### a. Application of the Treating Physician Rule

The ALJ afforded "little weight to the treating source opinions" because "[t]hese opinions indicate that the claimant can perform less than the full range of sedentary work . . . ." T. 28. The ALJ acknowledged that the opinions were completed by treating sources, but found that the opinions were "not supported by clinical findings during the time period being adjudicated." Id.

As acknowledged by the ALJ, the relevant period for determining whether plaintiff was under a disability is July 31, 2010, her alleged onset date, through December 31, 2010, her date last insured. T. 25. The treating source statements provided by plaintiff include: (1) a treating source statement and accompanying medical records from Dr. Steven Bock, MD, dated July 23, 2014 and July 21, 2014, respectively; (2) a treating source questionnaire completed jointly signed by Kelly Miller, FNP, and Dr. Henda Bouali, MD, dated August 26, 2014; and (3) a treating source questionnaire completed by Dr. Frank C. Noonan, dated September 11, 2014. Id. at 398-408, 438-42. The ALJ also considered DDS medical consultant R. Nobel, PhD's opinion, which was signed on April 3, 2013, and assigned the opinion little weight because Nobel never examined plaintiff.[2] Id. at 28.

Dr. Bock's letter states that plaintiff has suffered from lyme disease "since at least 2011 if not before." T. 398. She has also suffered from severe myofascial pain, mixed connective tissue disease, fatigue, and cognitive dysfunction since 1995. Id. In addition,

---

[2] Plaintiff's brief does not specifically object to this determination by the ALJ. See Dkt. No. 10.

Dr. Bock noted that plaintiff has allergies, chronic sinus pain, severe pelvic pain from chronic vulvodynia, and is "reactive" to chemicals and mold. Id. In addition, "CI spams and fibromyalgia" began in 1995, and she cannot sit on one position or drive for too long because of these ailments. Id. The cognitive dysfunction that she suffers due to lyme and tick bourne disease would make it difficult for her to stay on task during an eight-hour workday, and would result in increased absences from work. Id.

Dr. Bock also completed a questionnaire, dated July 26, 2014, in which he opined that plaintiff's conditions would cause her both pain and fatigue, and that the conditions and side effects of any medications used to treat those conditions would diminish her concentration and work pace. T. 407. Dr. Bock opined that plaintiff would be off task more than 33% of the day, and would miss more than four days of work per month. Id.

Miller and Dr. Bouali's questionnaire, dated August 26, 2014, states that plaintiff's "conditions" would cause fatigue, but would not cause pain. T. 439. However, the questionnaire does not identify which conditions it is referring to. The pain from plaintiff's conditions would cause the diminishment of work pace, but would not diminish her concentration. Id. The conditions would make it necessary for plaintiff to rest. Id. She would be off task 10% or less during the work day. Id. She would miss work about three times per month. Id. at 440. Dr. Bouali opined that the limitations set forth in the questionnaire were present since her first examination of plaintiff on October 27, 2011. Id. Dr. Bouali gave no opinion as to whether the conditions would have exisited at least one year prior to her first examination of plaintiff. Id.

Dr. Noonan completed a questionnaire, dated September 11, 2014, without identifying the conditions for which he treats plained. T. 441. However, he opined that

plaintiff's conditions would cause her both pain and fatigue, and that the conditions and side effects of any medications used to treat those conditions would diminish her concentration and work pace. Id. She would be off task more than 33% of the day and would be absent from work more than four days per month. Id. at 441-42. Dr. Noonan stated that plaintiff suffers the side effects of fatigue and possible low white blood cells as a result of her Malarone medication, and possible irregular heart rhythm from her Zithromax medication. Id. at 442. Dr. Noonan opined that plaintiff can sit for approximately one hour during an eight-hour workday, and that she should change positions every 15-20 minutes. Id. Plaintiff can stand or walk for approximately one hour during an eight-hour workday. Id. She can lift up to ten pounds up to three hours per day. but should not lift more than ten pounds at all. Id.

Plaintiff takes issue with the ALJ's decision to afford only little weight to the opinions of Dr. Bouali, Dr. Bock, and Dr. Noonan. Dkt. No. 10 at 16-22. Defendant argues that the ALJ's decision to afford little weight to the opinions of record is supported by substantial evidence. Dkt. No. 11 at 7-13. The Court agrees with defendant.

First and foremost, it is important to note that the period of disability alleged by plaintiff encompasses only five months—from July 31, 2010, through December 31, 2010. T. 25. The record contains no treatment notes during this alleged period of disability, leaving the ALJ the job of determining disability using only treatment records and opinions that both predate and postdate the alleged period of disability.

Plaintiff argues that the ALJ erred in not adopting the limitations set forth in Dr. Bock, Dr. Bouali's and Dr. Noonan's opinions. Dkt. No. 10 at 16-22. However, the ALJ found that the doctors' opinions were "not supported by clinical findings during the time period being

adjudicated." T. 28. The ALJ correctly found that the doctors' limitations were not supported by an musculoskeletal clinical findings or concentration deficits from the July-December 2010 period. Id. Indeed, plaintiff submitted no medical records evidencing that she received any medical treatment of any kind from July-December 2010. Plaintiff's "failure to present any medical evidence from that period seriously undermines [her] contention that [she] was continuously disabled during that time." Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989). Additionally, the ALJ found that plaintiff's lack of documented medical evidence for the July-December 2010 period undermined her own reported physical symptoms. T. 27.

The medical evidence in the does not support the medical opinions of record. For example, on June 29, 2012, plaintiff presented at UHS in Binghamton, New York, for a medical check-up on a "whim" to get prescription refills. T. 213. The doctor who examined her noted that she was "anxious" but otherwise, her physical examination was normal and unremarkable. Id. at 214-15. Although plaintiff complained of aches and pains, her range of motion was good and she had no swelling or heat in any joints. Id. at 215. The doctor noted that plaintiff was "provider hopping" and that such behavior was not conducive to good medical care. Id. at 216. On November 26, 2012, plaintiff returned to UHS complaining of sinus issues. Id. at 218. She described her pain level as a five out of ten. Id. at 219. A physical exam of her sinuses was largely unremarkable, although the doctor did observe that her TSH (thyroid-stimulating hormone) was slightly suppressed. Id. at 220. The doctor also noted that plaintiff suffered from "many other mysterious difficulties," indicating that plaintiff's ailments were not supported by clinical findings. Id. Plaintiff was seen at UHS again on December 18, 2012, complaining of low back and beck pain. T. 222.

She described her pain as a five out of ten. Id. Soft tissue techniques and passive stretching appeared to alleviate her symptoms. Id. at 225. She complained of musculoskeletal pain again on May 6, 2014. Id. at 319.

In terms of plaintiff's suffering vulvodynia, the record shows that she underwent surgical procedures in both 2008, and on April 29, 2009—almost two years prior to the alleged onset date—to treat vaginal stenosis and dyspareunia. T. 445, 413. She did not seek medical treatment for vulvodynia again until 2014, when she was seen by Dr. Andrew Goldstein, complaining of vaginal pain. Id. at 421. Dr. Goldstein recommended diazepam rectal suppositories, Botox injections, and a vaginal dilator. Id. at 422.

The ALJ did credit the extensive medical records involving plaintiff's treatment for asthma in restricting plaintiff's RFC to an indoor, climate-controlled environment. T. 27. Indeed, plaintiff's records indicate that she regularly received treatment for asthma before the alleged onset date, and continued treatment after the date last insured. See T. 238, 242, 248, 253, 258, 262. Based on these treatment records indicating that plaintiff's condition was exacerbated by environmental allergens, the ALJ restricted her RFC to an indoor, climate-controlled environment. T. 27, 262.

Plaintiff's argument that the ALJ failed to consider the opinions of her treating physician is weakened by the fact that none of the physicians who submitted a medical opinion treated plaintiff during, or even near in time to, the relevant period. Although Dr. Bock submitted an opinion stating that plaintiff suffered from lyme disease, chronic vulvodynia, and fibromyalgia, there is nothing in the record to indicate that he was personally involved in diagnosing or treating plaintiff for these conditions prior to 2014. See T. 398. This indicates that Dr. Bock was simply reciting plaintiff's medical history, as told by

plaintiff. See Burden v. Astrue, 588 F. Supp. 2d 269, 276 (D. Conn. 2008) (finding that plaintiff's self-reported symptoms did not constitute a medical opinion when transcribed by a doctor). Further, because the medical opinions of record were rendered by physicians who did not treat plaintiff until approximately two years after her date last insured, there is no evidence that her fibromyalgia (diagnosed in 1995) and vulvodynia (diagnosed in 1997) worsened during the relevant period. See T. 398. Plaintiff had surgery to treat her vulvodynia in 2008 and 2009, but produces no records between 2009 and her visit to Dr. Goldstein in 2014. Thus, it was reasonable for the ALJ to afford little weight to the medical opinions of record. See Snell v. Apfel, 177 F.3d 128, 136 (2d Cir. 1999) (noting that the plaintiff must show that her condition deteriorated before the end of her coverage period in order for the condition to be disabling).

In sum, the ALJ's RFC determination is supported by substantial evidence. "[U]nder certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, 'an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." Gross v. Astrue, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014) (quoting House v. Astrue, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)). Those circumstances are present here. Although plaintiff claims that the ALJ erred in failing to consider exertional limitations caused by her musculoskeletal pain and vulvodynia, among other ailments, the scarcity of treatment records regarding those conditions, especially during the crucial July-December 2010 period, renders this argument meritless. Perez v. Sec'y of Health and Human Servs., 958 F.2d 445, 447 (1st Cir. 1991) ("Although claimant also mentioned other conditions that might pose exertional limitations—a back condition

and cervical spasms—there was a paucity of medical evidence in the record concerning these conditions."). Ultimately, it is plaintiff's burden to prove that she was disabled before the date last insured. Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998). Thus, the Court finds that substantial evidence supports the ALJ's RFC determination.

## 2. The ALJ Properly Assessed Plaintiff's Pain

Plaintiff argues that the ALJ failed to assess the severity of her symptoms by looking only to objective evidence. Dkt. No. 10 at 22-24. Defendant argues that the ALJ properly assessed plaintiff's pain and determined that her reported symptoms were not as severe as she stated. Dkt. No. 11 at 13-14.

"It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant. Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)) (additional citations omitted). The ALJ's assessment regarding the claimant's subjective complaints is a two-step inquiry. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). First, the ALJ must determine "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that the claimant does not suffer from such a medically-determinable impairment, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (quoting 20 C.F.R. § 404.1529(b)). However, an ALJ cannot reject a claimant's statements about

the limiting effect of symptoms "solely because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. § 404.1529(c)(2). The evidence to be considered by the ALJ includes "information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] treating or nontreating source, and observations by [Social Security Administration] employees and other persons." Id. § 404.1529(c)(3).

If a medically-determinable impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and,
>
> (vii) Other factors concerning [the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In determining what amount of credibility, if any, to afford a claimant's subjective complaints, the ALJ must consider all of the objective medical and additional evidence with the claimant's subjective complaints to determine whether there are any inconsistencies or conflicts. 20 C.F.R. § 404.1529(c)(4). If a claimant's subjective complaints are consistent with the objective medical evidence, the ALJ will include the claimant's complaints in his or her assessment of the claimant's RFC. Id. "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons, 'with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV. 9435(JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

An ALJ is not required to address all seven factors enumerated in 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. § 416.929(c)(3) as long as the ALJ engages in "precise reasoning," the decision is supported by evidence in the record, and the decision "clearly indicates the weight . . . [given] to [the] claimant's statements and the reasons for that weight." Felix v. Astrue, No. 11-CV-3697 (KAM), 2012 WL 3043203, at *8 (E.D.N.Y. July 24, 2012). Where the ALJ fails to state specific reasons for his or her credibility finding, and there is no evidence in the record supporting those reasons, the Court must remand. See Powell v. Astrue, No. 3:09-CV-01082 (FJS/GHL), 2010 WL 4004935, at *5 (N.D.N.Y. Aug. 13, 2010). However, "if the evidence in the record permits a reviewing authority to 'glean the rationale of an ALJ's decision,' the ALJ is not required to mention every item of testimony or to explain why he considered particular evidence unpersuasive or insufficient

to lead him to a conclusion of disability." Felix, 2012 WL 3043203, at *9 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Here, the ALJ determined that plaintiff's subjective complaints of pain were not as severe as she stated. T. 27. The ALJ's determination is supported by substantial evidence.

First, the ALJ noted that plaintiff's report of breathing difficulties was not consistent with her pulmonary function tests, which showed mild respiratory obstruction. T. 27; see id. at 281 (noting "mild, reversible airway obstruction"). Further, although plaintiff testified that she suffers from extreme fatigue, sinus, pressure, and pelvic floor pain, she also testified that she takes her golden retriever to "the trails" and takes the dog for walks. Id. at 58. She also testified that she cooks. Id. at 56. Although allergy testing revealed that plaintiff is allergic to dogs, she continued to keep dogs and cats in her home. See T. 208, 58. This undermines her testimony as to the severity of her symptoms. See SSR 16-3P, 2016 WL 1119029, at *8 (S.S.A. Mar. 16, 2016) (noting that the plaintiff's alleged symptoms may be found inconsistent with the record "if the individual fails to follow prescribed treatment that might improve symptoms").

She testified that in 2010 her vulvodynia pain and muscle pain was so severe that she could not sit for an extended period of time. T. 61. She testified that she still experienced severe pain when sitting at the time of the hearing in 2014. Id. However, only four months prior to the hearing, she told her allergy doctor that she had recently traveled to California. Id. at 284. The long journey from New York to California most certainly involved extensive periods of sitting, and this fact casts doubt on her claim that she cannot sit for extensive periods of time, and supports the ALJ's finding that she can sit for six hours during an eight-hour workday. Id. at 27. As stated previously, plaintiff's reported daily

activities were also inconsistent with her claims that she suffers from vulvodynia and muscle pain and fatigue. She reported that she takes her dog to hiking trails, and takes the dog on walks. Id. at 58. Further, despite plaintiff's testimony that she suffered severe pain and fatigue in 2010, she did not submit any medical records from the period in question—July-December 2010. Her failure to seek medical care for her physical ailments during the relevant time period undermines her claim. Cataneo v. Astrue, No. 11-CV-2671 (KAM), 2013 WL 1122626, at *20 (E.D.N.Y. Mar. 17, 2013) ("It is a natural inference that someone with an extremely painful physical impairment would not abstain from clinical treatment.").

Although plaintiff points to portions of the record that show that plaintiff had difficulties in some activities of daily living, her argument ignores the precedent that the ALJ is ultimately responsible for weighing the evidence. See Dkt. No. 10 at 23. Where, as here, the ALJ's determination is supported by substantial evidence, the Court will not disturb the ALJ's findings. Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner."). Thus, the Court finds that the ALJ properly evaluated plaintiff's subjective complaints of pain.

### 3. The ALJ Properly Assessed All Severe Impairments

Plaintiff argues that the ALJ failed to assess all severe impairments. Specifically, plaintiff argues that the ALJ erroneously found that plaintiff's myofascial pain, mixed connective tissue disease, fatigue, cognitive dysfunction, chronic sinus pain, chonric vulvodynia, fibromyalgia, arthritis, and autoimmune disorder were not severe. Dkt. No. 10 at 10. Defendant argues that plaintiff failed to establish that the previously identified ailments

were severe during the relevant period.  Dkt. No. 11 at 17.  Additionally, defendant asserts that where, as here, the ALJ found severe impairments at step two and continued the steps in the sequential evaluation, any error at step two is harmless.  Id. at 20.  The Court agrees.

Here, the ALJ assessed plaintiff's severe impairments at step two and determined that plaintiff suffered from asthma, allergies, and mild degenerative disc disease of the lumbar spine.  T. 25.  Even though the ALJ did not assess all of plaintiff's ailments as severe impairments, the ALJ clearly considered *all* of plaintiff's complained-of symptoms in formulating the RFC.  Id. at 27; see Stanton v. Astrue, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (finding no error where the ALJ's decision made clear that the ALJ considered the effects of all symptoms in formulating the plaintiff's RFC).  Specifically, plaintiff argues that the ALJ should have assessed plaintiff's fibromyalgia as severe.  Dkt. No. 10 at 12.  However, the symptoms that plaintiff describes are also symptoms that the ALJ discussed when formulating plaintiff's RFC.  The ALJ discussed plaintiff's reports of pain, chronic fatigue, and cognitive difficulties and found that plaintiff's medical records did not support a finding that the symptoms were as severe as plaintiff stated.  T. 27-28.

For these reasons, the Court finds that the ALJ did not err in determining plaintiff's severe impairments.

### III. Conclusion

Having reviewed the administrative transcript and the ALJ's findings, for the reasons stated herein, the undersigned concludes that the Commissioner's determination is supported by substantial evidence.  Accordingly it is hereby:

**ORDERED** that plaintiff Brenda Crouse's motion for a finding of disability (Dkt. No. 1) is **DENIED** and the Commissioner's decision finding no disability is **AFFIRMED**; and it is further; and it is further

**ORDERED** that defendant's cross-motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties in accordance with Local Rules.

Dated: March 10, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge